UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY P. SPARKS,

    Plaintiff,

v.                                        Case No. 1:09-cv-899
                                          Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on April 28, 1955 (AR 89).[1] He completed one year of college (AR 102). Plaintiff alleged a disability onset date of February 15, 2002 (AR 89, 96). He had previous employment in the military and military reserves as an operations specialist, as well as civilian jobs as a restaurant cook/bartender and as a package inspector for United Parcel Service (AR 92, 97, 458-59). Plaintiff identified his disabling conditions as congestive heart failure, coronary heart disease, depression, anxiety and migraine headaches (AR 96). On July 13, 2007, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 10-20). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity "since February 1, 2001, the alleged onset date" (AR 12).[2] At step two, the ALJ found that plaintiff suffered from severe impairments of: cardiovascular disease; depression; and post traumatic stress disorder (PTSD) (AR 12). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 13).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform work at the light exertional level not requiring more than occasional climbing of ramps, stairs, ropes and scaffolding; more than occasional stooping, kneeling, crouching or crawling; must avoid concentrated exposure to extremes of cold and heat, humidity, fumes, odors, dust, gases and areas of poor ventilation; must avoid concentrated exposure to working around heights; is limited to simple, unskilled work; and is limited to occasional contact with it [sic] the general public.

(AR 15). The ALJ also found that plaintiff was unable to perform any of his past relevant work (AR 17-18).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (AR 18-19). Specifically, plaintiff could perform 6,600 jobs in Michigan involving light, unskilled work, i.e., assembly work (1,600 jobs) and security guard (5,000

---

[2] Both plaintiff and defendant agree with the record that the alleged onset date was February 15, 2002. *See* Plaintiff's Initial Brief at p. i (docket no. 7); Defendant's Memorandum at p. 1 (docket no. 8). The ALJ cites no authority for finding that the alleged onset date was February 1, 2001.

4

jobs) (AR 18-19).[3] Accordingly, the ALJ determined that plaintiff was not disabled under the Social Security Act "at any time from February 1, 2001 through the date of the decision" (AR 19).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

**A.  The ALJ committed reversible error by not properly considering the opinion of plaintiff's treating physician.**

In May 2005, Dr. Shea diagnosed plaintiff as exhibiting moderate major depression, severe partner relational problems, severe post-traumatic stress disorder ("PTSD") (non-combat), severe acute stress, insomnia and tobacco use (AR 400-02). By November 2006, the doctor diagnosed plaintiff as suffering from depression, PTSD, acute stress, insomnia, tobacco use and severe partner relational problem (AR 336-37). At that time, plaintiff stated that he was feeling better, had "immaculate grooming and hygiene," and was preparing to leave to rent an apartment in Phoenix and taking a trip to Europe with his daughter (AR 336). Plaintiff's improvement was reflected in the doctor assigning him a Global Assessment of Functioning ("GAF") score of 65. *See Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.[4] This score lies within the 61-70 range, which indicates "some mild symptoms (e.g.,

---

[3] The court notes that the vocational expert's testimony established that a hypothetical person, such as plaintiff, could perform 16,000 assembler jobs, as opposed to 1,600 assembler jobs as set forth in the ALJ's decision (AR 491-92).

[4] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum of mental health-illness. *DSM-IV-TR* at pp. 32, 34. The GAF score is taken from the GAF scale, which rates individuals' "psychological, social, and occupational functioning," and "may be particularly useful in tracking the clinical progress of individuals in global terms." *Id*. at 32. The GAF scale ranges from 100 to 1. *Id.* at 34. At the high end of the scale, a person with a GAF score of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear expectation

depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *DSM-IV-SR* at 34. Approximately four months later, on March 8, 2007, Dr. Shea completed a "Medical Provider's Assessment of Ability to do Mental Work-Related Activities" dated March 8, 2007, in which she opined that plaintiff suffered from either "marked" or "extreme" limitations in all areas of functioning except for his ability to maintain his personal appearance (which the doctor determined as a "mild" limitation) (AR 435-37).

Plaintiff contends that the ALJ did not properly consider the opinions expressed by his psychiatrist, Diane K. Shea, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are

---

of death." *Id.*

supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

The ALJ addressed Dr. Shea's opinions as follows:

> [The doctor] indicated that claimant had "extreme" limitation in his ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention and concentration; understand and carry out complex job instructions; and had "marked" limitation in his ability to follow work rules, function independently, understand and carry out detailed but not complex job instructions, behave in an emotionally stable manner and demonstrate reliability; and had "mild" limitations in his ability to maintain personal appearance. She further indicated that Mr. Sparks had "extreme" limitation in the areas of daily activities, the ability to concentrate, persist at tasks and keep pace; and had "marked" limitation in maintaining social functioning. She opined that the claimant experienced four or more episodes of decompensation, each of extended duration (Exhibits 12E, 9F).
>
> \*   \*   \*
>
> The Administrative Law Judge finds that the preceding opinion as to debilitating mental limitations are not reflected in Dr. Shea's narrative office records (Exhibit 8F). Furthermore, Dr. Shea did not say what diagnosis produced such overwhelming limitations. Indeed, her records reflect that most of the claimant's depression appears relative to an unhappy marriage to a paraplegic and residing with her extended family (Exhibits [sic] 8F).

(AR 13-14). The ALJ ultimately concluded that:

> The "marked" and "extreme" limitations in many of the categories fail to comport with the diagnostic impressions contained in her own narrative office records (Exhibits 8F, 9F). Thus, her responses on the form procured by counsel is void of probative value.

(AR 17).

The ALJ determined that plaintiff had only mild restrictions of daily living, noting that he cares for his invalid wife when he is in Michigan, with a "recurrent theme" in the medical

7

records being "his unhappiness and living with her nine extended family members [] none of whom speak English" (AR 14). Plaintiff's treating source described him as having "excellent grooming" (AR 14). The ALJ observed that plaintiff is a "heavy reader," and his activities included computer use, playing the guitar, playing golf, collecting music, traveling extensively with "much time" on driving trips (spending approximately six months per year in Phoenix, Arizona), and attending church on a weekly basis (AR 14). Plaintiff resides on a gold course; aspires to move to San Diego, California; aspires to buy a big houseboat; and has potential plans to travel to Europe with his daughter (AR 14).

Contrary to Dr. Shea's opinion, the ALJ found that plaintiff had no more than moderate limitations in social functioning, with the limitation primarily restricted to familial issues (AR 14). The ALJ found that plaintiff had moderate difficulties with respect to concentration, persistence or pace (AR 14). While plaintiff testified that his focus was not very good, the ALJ noted that narrative psychiatric records provided by a Veterans Administration facility consistently indicated that plaintiff was "oriented and alert times three," and described him as articulate and intelligent and an avid reader (AR 14). The ALJ noted that plaintiff had the ability to engage in activities requiring concentration such as golfing, playing the guitar and taking extensive driving trips on his own (AR 14). In addition, the narrative office psychiatric notations did not substantiate ongoing problems with concentration that would produce more than moderate limitation (AR 14). The ALJ disagreed with Dr. Shea's conclusion regarding decompensation of extended durations, noting that plaintiff "has experienced no episodes of decompensation, each of a extended duration"

(AR 15).[5] Having discounted Dr. Shea's opinion as unsupported by the evidence, including her own treatment notes, the ALJ relied upon the restrictions as set forth in the Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment prepared by the non-examining DDS physician, Robert L. Newhouse, M.D., who concluded that plaintiff was affected by memories of the past which may cause difficulty in concentration, may have trouble with complex detailed tasks but retains the ability to do simple tasks on a sustained basis (AR 15-17, 270-86). *See* 20 C.F.R. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (when treating physicians and consulting physicians provide conflicting opinions, an ALJ may decide to accept the consulting physician's assessment, as long as that opinion is supported by substantial evidence).

The ALJ has articulated good reasons for not crediting Dr. Shea's opinion, which indicated that plaintiff suffered from extreme and marked limitations in virtually every area of mental functioning. Accordingly, plaintiff is not entitled to relief on this claim.

> **B.  The ALJ did not have substantial evidence to support his finding that plaintiff could have performed light work.**

Plaintiff contends that the ALJ erred in finding that plaintiff could perform light work given his history of cardiac disease. Specifically, plaintiff asserts that while his ejection fraction of 40% exceeds the 30% ejection fraction necessary to meet the requirements of Chronic Heart Failure

---

[5] In this regard, the court notes that Dr. Shea's treatment notes from November 2006 are inconsistent with her extreme opinion expressed four months later.

under Listing 4.02A, his ejection fraction is nevertheless below the "normal levels."[6] The ALJ noted that plaintiff sustained a myocardial infarction in 1997 and has a 60% service-connected disability due to this condition (AR 12). The ALJ observed that according to the New York Heart Association (NYHA) Functional Classification System, plaintiff's cardiovascular condition is a "class II," which is defined as slight limitation of physical activity; comfortable at rest, but ordinary physical activity results in fatigue or dyspnea (AR 12).[7] The ALJ noted that the only physician imposed limitation was not to lift or transfer his paraplegic wife, and that plaintiff's extensive daily activities, including frequent travel alone, mitigated against a finding that he suffered from debilitating limitations (AR 16-17). Plaintiff does not point out any restrictions other than a recommendation from a cardiologist that he stop smoking (AR 152). Based on this record, and the opinion expressed by a non-examining DDS consultant, the ALJ concluded that plaintiff could perform a limited range of light work (i.e., lifting lift and/or carry 20 pounds occasionally and 10 pounds frequently (AR 17, 252-63). *See, e.g., Mejia v. Astrue*, -- F. Supp. 2d --, 2010 WL 2572006 at *9-14 (S.D. N.Y. 2010) (the slight limitation of physical activity represented by an NYHA "class II" cardiovascular condition with an ejection fraction of 35% to 40% does not preclude an individual from performing light work under the Social Security regulations).

Substantial evidence supports the ALJ's determination that plaintiff could perform a range of light work. Accordingly, plaintiff is not entitled to relief on this claim.

---

[6] "Ejection fraction" is defined as "the proportion of the volume of blood in the ventricles at the end of diastole that is ejected during systole; it is the stroke volume divided by the end-diastolic volume , often expressed as a percentage. It is normally 65 +- 8 per cent; lower values indicate ventricular dysfunction." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at p. 660.

[7] "The NYHA functional classification system assesses a patient's degree of heart failure." *Hodges v. Astrue*, No. 2:09cv-0001, 2010 WL 750091 at *2 (E.D. Mo. March 2, 2010).

### C. The ALJ committed reversible error by failing to follow the vocational expert's response to a factually accurate hypothetical question.

Finally, plaintiff contends that the ALJ should have adopted Dr. Shea's restrictions in formulating the hypothetical question posed to the vocational expert (VE). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnose. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

When asked to assume that a hypothetical person had the restrictions as set forth in Dr. Shea's March 2007 opinion, the VE testified that such restrictions would be work preclusive due to the extreme limitations in dealing with work stresses, maintaining attention and concentration,

11

and difficulties maintaining concentration, persistence and pace (AR 492). Plaintiff contends that the opinion of the DDS examining psychologist was essentially in agreement with Dr. Shea's opinion, "meaning that Shea's opinion was essentially uncontroverted." Plaintiff's Brief at p. 16. Plaintiff is apparently referring to the October 2004 opinion issued by DDS examiners Allison Bush, M.S., LLP, and Dennis L. Mulder, Ed. D. (AR 264-68). Plaintiff does not explain how these two opinions are "essentially in agreement." The Bush/Mulder report did not conclude that plaintiff suffered from the broad range of serious mental limitations as set forth in Dr. Shea's opinion. For the reasons stated above, the ALJ properly discounted Dr. Shea's opinion and adopted the less severe restrictions identified by Dr. Newhouse. Based on those restrictions, the VE testified that plaintiff could perform some 16,000 assembler positions and 5,000 security guard positions (AR 491-92).

The hypothetical question posed by the ALJ was supported by substantial evidence and included limitations which the ALJ determined as credible. Accordingly, plaintiff is not entitled to relief on this claim.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be affirmed.


Dated: October 28, 2010         /s/ Hugh W. Brenneman, Jr.
                                HUGH W. BRENNEMAN, JR.
                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).